10 A.3d 1201

IN THE MATTER OF WILSON J. CAMPBELL, A FORMER JUDGE OF THE MUNICIPAL COURT.

January 28, 2011.

**ORDER**

The Advisory Committee on Judicial Conduct having filed with the Court pursuant to *Rule* 2:15–15(a), a presentment recommending that, as a result of his failure to report a consensual romantic relationship with his assigned bailiff, **WILSON J. CAMPBELL**, a former Judge of the Municipal Court of the City of Jersey City, be publicly reprimanded for violating the *Code of Judicial Conduct;*

And the Court having ordered respondent to show cause why he should not be publicly disciplined through the imposition of an appropriate sanction;

And respondent having contended that consensual dating relationships in the judiciary workplace are permitted under the *Judiciary of the State of New Jersey Policy Statement on Equal Employment Opportunity, Affirmative Action, and Anti–Discrimination* (July 3, 2007) (EEO Statement),[1] and that he was not, in any event, in a supervisory role over the bailiff, such that reporting would be required;

And the Court being in agreement with the conclusion of the Advisory Committee on Judicial Conduct that respondent's position relative to the bailiff required him to report his relationship with the bailiff to his superiors in order to permit appropriate administrative reassignment;

And the Court specifically having rejected respondent's contention that, although, as "a judge, by virtue of his ... general position of authority within the courtroom, [he] exercise[d] some measure of supervision over ... the court personnel assigned to work within the court[,]" he nonetheless was not a "supervisor" of his bailiff for purposes of the EEO Statement;

And the Court further having concluded that the clear purposes of the disclosure requirements in the EEO Statement are "to eliminate any appearance of, or actual, impropriety in the workplace," and to permit the taking of affirmative steps to prevent harassment or discrimination from occurring within the Judiciary

---

[1] The EEO Statement in effect at the time of the events at issue provided:

Consensual dating relationships between Judiciary employees are generally not the Judiciary's business. *However, when the two people currently or previously involved in such relationships work as supervisor and subordinate, the supervisor must promptly inform his or her immediate superior of the personal relationship so that the Judiciary may take action to change the reporting relationship between the individuals.* This is necessary in order to eliminate any appearance of, or actual, impropriety in the workplace. For justices, judges and Judiciary employees subject to the New Jersey Tort Claims Act, *N.J.S.A.* 59:1-1, et seq., failure to give proper notice to the supervisor's immediate superior may result in the denial of legal representation and indemnification by the State in the event that a discrimination or sexual harassment lawsuit is filed in connection with the relationship. [ (emphasis added).]

due to private relationships among members of the Judiciary and thereby to avoid such claims as against the Judiciary;

And, for those reasons and in the context of the disclosure requirements of the EEO Statement, the Court having adopted the broad description of a "supervisor" set forth in *Entrot v. BASF Corp.*, 359 *N.J.Super.* 162, 181, 819 *A.2d* 447 (App.Div. 2003) [2];

And for good cause appearing;

It is ORDERED that the findings and recommendation of the Advisory Committee on Judicial Conduct in respect of respondent's failure to report a private relationship with his assigned bailiff are adopted and **WILSON J. CAMPBELL,** a former Judge of the Municipal Court of the City of Jersey City, is hereby publicly reprimanded for his violations of *Canon* 1 (a judge should observe high standards of conduct so the integrity and independence of the judiciary may be preserved) and *Canon* 2A (a judge

---

[2] *Entrot* provides that:

> Our reading of *Lehmann* [v. *Toys 'R' Us, Inc.*, 132 *N.J.* 587, 626 *A.2d* 445 (1993),] and its progeny, reviewed above, suggests that the Court, instead of requiring a litmus test depending on specific factors (e.g., power to fire or power to control daily tasks), would make the decision turn on whether the power the offending employee possessed was reasonably perceived by the victim, accurately or not, as giving that employee the power to adversely affect the victim's working life. Thus, such indicia as the power to fire and demote, to influence compensation, and to direct all job functions would be probative of supervisory status, but would not exclude other indicia. Also relevant would be any evidence that the alleged harasser controlled the workplace in subtler and indirect ways, as long as the effect was to restrict the victim-employee's freedom to ignore sexually harassing conduct. Essentially, this is the *Dinkins* [v. *Charoen Pokphand USA, Inc.*, 133 *F.Supp.*2d 1254 (M.D.Ala.2001),] approach as opposed to the more rigid *Parkins* [v. *Civil Constructors of Il., Inc.*, 163 *F.3d* 1027 (7th Cir.1998),] analysis. We find support for this view in the fact that *Mikels* [v. *City of Durham*, 183 *F.3d* 323 (4th Cir.1999),] *Grozdanich* [v. *Leisure Hills Health Center, Inc.*, 25 *F.Supp.*2d 953 (D.Minn.1998),] and *Sims* [v. *Montgomery County Comm'n*, 766 *F.Supp.* 1052 (M.D.Ala.1990),] were among the decisions cited with approval by the Court in *Cavuoti* [v. *N.J. Transit Corp.*, 161 *N.J.* 107, 124–25, 735 *A.2d* 548 (1999) ].

should act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary) of the *Code of Judicial Conduct.*

